FILED

2009 FEB 19 PM 1:26

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

6:09-cv-327-ORL-28GJK

COLLING, GILBERT, WRIGHT & CARTER
WILLIAM B. YOUNG, JR.
wyoung@thefloridafirm.com
801 North Orange Avenue
Suite 830, Top Floor
Orlando, FL 32801
Telephone: (407) 712-7300
Facsimile: (407) 712-7301

FISHMAN, HAYGOOD, PHELPS, WALMSLEY,
WILLIS & SWANSON, LLP
JOSEPH C. PEIFFER
jpeiffer@fishmanhaygood.com
201 St. Charles Avenue
46th Floor
New Orleans, LA 70170
Telephone: (504) 586-5259
Facsimile: (504) 586-5250

BURKE, HARVEY & FRANKOWSKI, LLC
RICHARD S. FRANKOWSKI, JR.
rfrankowski@bhflegal.com
2151 Highland Avenue
Suite 120
Birmingham, AL 35205
Telephone: (205) 930-9091
Facsimile: (205) 930-9054

*Attorneys For Plaintiff*

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| KURT ARCHIBALD, on Behalf of Himself and All Others Similarly Situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | 1. Deceptive and Unfair Trade Practices |
| DYNETECH CORPORATION; WIZETRADE GROUP, LLP, f/k/a GLOBALTEC SOLUTIONS, LLP; and COMMANDTRADE, LP, | 2. Unjust Enrichment |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff KURT ARCHIBALD brings this nationwide class action against DYNETECH CORPORATION; WIZETRADE GROUP f/k/a GLOBALTEC SOLUTIONS, LLP; and COMMANDTRADE, LP, (collectively referred to herein as "Defendants"), on behalf of himself and all others similarly situated. Upon information and belief, as well as the investigation of counsel, Plaintiff alleges as follows:

## INTRODUCTION

1. This class action challenges Defendants' marketing and sales practices in connection with CommandTRADE software, a computer program that allows consumers to trade stocks automatically.

2. Defendants market CommandTRADE nationwide on a uniform basis via live events as well as television infomercials, internet marketing and other media outlets, claiming that the software is a "precision tool" that allows consumers to set their specific trading parameters and utilize the software's automatic trading feature to trade stocks while away from the computer based upon those parameters.

3. In fact, when used in automatic trading mode, CommandTRADE software makes trades outside the scope of the parameters set by the user of the program, causing significant and unexpected losses.

4. Defendants have profited enormously from their sales of CommandTRADE by charging thousands of dollars for a software program that does not function as represented. Defendants' uniform deceptive and unfair practices violate Florida law, entitling Plaintiff and Class members to damages, attorney's fees and costs, and injunctive relief.

## THE PARTIES

5. Plaintiff Kurt Archibald is, and at all times relevant herein was, a resident and citizen of the State of Virginia.

6. Defendant WizeTrade Group, LLP, formerly known as GlobalTec Solutions, LLP ("GlobalTec") is a Texas limited liability partnership and a wholly-

owned subsidiary of Dynetech Corporation. GlobalTec markets and sells a variety of computer software products (including CommandTRADE software), subscription services, educational seminars, and other related products and services in this District, across Florida, and across the United States.

7. Defendant Dynetech Corporation ("Dynetech") is incorporated in the state of Florida and maintains its principal place of business in Orlando, Florida. Dynetech markets and sells GlobalTec's software (including CommandTRADE software) and related products and services in this District, across Florida, and across the United States. Plaintiff is informed and believes and thereon alleges that Dynetech's home state, Florida, has a substantial interest in regulating the conduct of companies operating out of Florida and in applying its laws to Defendants.

8. Defendant CommandTRADE, LP, is a Texas limited partnership and a subsidiary of GlobalTec. CommandTRADE, LP, markets and sells CommandTRADE software and related products and services in this District, across Florida, and across the United States.

## JURISIDICTION AND VENUE

9. Plaintiff files this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

10. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 and §§1711-1715. On information and belief, the aggregate amount in controversy for this class action exceeds $5,000,000. *See* Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332.

11. Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

12. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(a)(1) and (c) because each Defendant is subject to personal jurisdiction in this District. Defendant Dynetech is incorporated in the state of Florida and maintains its principal

place of business in Orlando, Florida. As set forth in paragraphs 37 through 43 (36 through 42?) of this Complaint, the allegations of which are fully incorporated herein by this reference, Defendants GlobalTec and CommandTRADE, LP, have engaged in substantial activity within this District, consisting of continuous and systematic business contact with this District, thereby subjecting them to personal jurisdiction under both the specific and general jurisdiction provisions of the Florida long-arm statute. *See* Fla. Stat. Ann. §§ 48.193(1)(a), 48.193(2).

13.    As set forth in paragraphs 37 through 43 (36 through 42?) of this Complaint, the allegations of which are fully incorporated herein by this reference, Defendants have sufficient minimum contacts with this District to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit in this District does not offend traditional notions of fair play and substantial justice.

## DEFENDANTS' DECEPTIVE AND UNFAIR PRACTICES

### The CommandTRADE Software Program

14.    GlobalTec and CommandTRADE, LP, have collectively developed a computer software program called CommandTRADE.

15.    CommandTRADE software purportedly enables users to select stocks for analysis, specify certain trading rules and parameters, and both back-test and forward-test the selected securities and trading rules using historical and real-time market data.

16.    CommandTRADE users may also select and implement personalized trading strategies by applying one or more trading and investment rules to selected securities.

17.    Once users have selected trading rules, the software permits users to send orders to buy or sell securities electronically through Internet linkage with the user's selected participating broker-dealer, with whom the user must maintain a personal account.

18.    The software may also be programmed by the user to run in "automatic" mode, whereby the program purportedly monitors real-time market data and transmits

a specified order to purchase or sell securities to the user's participating broker-dealer for execution when user-specified parameters are engaged.

19. Defendants charge users a one-time license purchase and installation fee, as well as a monthly fee covering access to the CommandTRADE servers, customer and technical support, software updates, connectivity to their participating broker-dealers, and maintenance of market data feeds.

20. Defendants also collect a fee from participating broker-dealers for their connectivity to the system.

**Defendants' Deceptive Representations Regarding CommandTRADE Software**

21. GlobalTec and CommandTRADE, LP, have represented to the Securities and Exchange Commission that when CommandTRADE software "operates in automatic mode, orders are transmitted only in accordance with instructions or parameters established by the user, and only involving individual stocks selected by the user."

22. Defendants' marketing materials confirm the purportedly user-defined nature of the software's automated trading feature. For example, Defendants' Internet marketing promotes the software's "automated trading platform," claiming that the platform allows users to "save time and take your emotions out of your trading by letting CommandTRADE enter and exit your trades through our integrated broker dealers, *based on the strategies you have put in place to direct your trading.*" See http://www.commandtrade.com/equities (visited on 8/14/08) (emphasis added).

23. Defendants' written marketing materials further bolster the supposed precision of the software's automated trading feature, stating: "Automated order execution is one of the most power tool traders and long-term investors can have. Successful trading is accomplished by controlling your emotions and having an edge over the other traders. . . . CommandTRADE, in conjunction with integrated broker dealers, is your personal automated trading program. You now stand above your peers and fellow traders by holding *a precision tool in your hand that you control.*

1  You are able to set your account risk controls, run predefined strategies, create your
2  own customized strategies, or share strategies via the private CommandTRADE
3  interactive Web community  Basically, CommandTRADE is the whole package you
4  have been waiting for." (Emphasis added.)

5      24.    The CommandTRADE software box also touts the user-defined nature of
6  the automated trading feature, stating as follows: "An automated trading platform is a
7  software program which allows you to pick a stock, set trading parameters based on
8  your own personal trading style, and then ***automatically buys and sells that stock***
9  ***based on your parameters.*** This new revolutionary technology not only eliminates
10 the emotional aspects of trading, but it also makes sure your trades occur in real time –
11 the very nanosecond your parameters have been met, even when you're not around."
12 (Emphasis added.)

13     25.    The CommandTRADE software box further states: "CommandTRADE,
14 in conjunction with our integrated broker dealers, is a powerful, user-friendly personal
15 automated trading platform.  Save time and take your emotions out of your trading by
16 letting CommandTRADE enter and exit your trades through our integrated broker
17 dealers, ***based on your selected strategies.***  Choose from the many Predefined or
18 Community-Defined Strategies that will fit your investment goals, or create your own
19 customized strategies." (Emphasis added.)

20     26.    The CommandTRADE software License Agreement that accompanies
21 the sale of CommandTRADE software similarly confirms the purportedly automated
22 nature of the program, stating as follows: "All order generating instructions are held
23 by the CT Platform until such time as the CT Platform, based on User's chosen
24 Predefined Strategy, User Defined Strategy or Community Strategy, recognizes
25 information which indicates that the order generating conditions have been met and
26 that a market order should be sent; then the order will be sent as a market order
27 automatically to user's chosen Participating Broker."

28     27.    The License Agreement further provides as follows: "The CT Platform

is designed to automate the order process and improve efficiencies by *using your selected parameters and Predefined Strategies, User Defined Strategies or Community Strategies to then automatically send the order to a Participating Broker.* This automation is intended to eliminate the need for you to manually send the order instructions or information to a Participating Broker." (Emphasis added.)

28. Defendants also sponsor training workshops to instruct consumers in how to use CommandTRADE software, including the program's automated trading feature. The Training Workbook provided to consumers explains that when the user attaches a strategy to a stock and enables that trading strategy, the CommandTRADE program on the user's computer sends all of the information to the CommandTRADE Server, where it is stored for 30 days. When the conditions of the user's strategy have been met, the CommandTRADE Server sends a market order to the Integrated Broker/Dealer, where the trade is actually executed. The Integrated Broker/Dealer then sends the confirmation of the trade back to the CommandTRADE Server, which then forwards the confirmation back to the CommandTRADE program in the customer's computer.

29. Contrary to Defendants' repeated representations regarding the user-defined automatic trading feature of CommandTRADE, the software in fact transmits buy and sell orders that fall outside the user's specified parameters, without the user's approval or consent.

30. Defendants have admitted that CommandTRADE is highly unstable and that the automated trading feature does not always function in the manner in which it is represented to consumers.

**Defendants' Nationwide Marketing of CommandTRADE Software**

31. Defendants market CommandTRADE software nationwide on a uniform basis via television advertising and/or infomercials, as well as live workshops and training sessions throughout the country, at which the features of CommandTRADE are demonstrated and customers may purchase the software.

-7-

32. Defendants also market CommandTRADE software at annual "WizeFEST" events, sponsored by Defendants, where consumers may purchase the software and attend CommandTRADE training sessions.

33. Defendants also use the internet to market CommandTRADE software on a nationwide basis. Defendants' internet marketing promotes the software's automated trading platform, claiming that "CommandTRADE can enable traders of all backgrounds to potentially earn money while they are away from their computer. . . . CommandTRADE is the individual investor at their most free and most in command of their financial destiny." *See* http://www.commandtrade.com/equities (visited on 8/14/08).

34. Defendants have placed several videos on the internet entitled "Automate Your Trading: Set It and Forget It," promoting CommandTRADE's automatic trading feature and providing instructions on "how easy it is to put your trading on cruise control" and "auto-pilot." *See* http://www.commandtrade.com/videos (visited on 8/14/08).

35. Defendants further market CommandTRADE software on their nationally broadcast web-based "Wizetrade TV," which includes regular features utilizing CommandTRADE software and explaining how to use various CommandTRADE features.

**Defendants' Substantial Contacts with Florida**

36. Defendants have purposefully availed themselves of the privilege of conducting business in the state of Florida by marketing their merchandise to Florida residents and soliciting and procuring business in Florida.

37. Live workshops at which CommandTRADE software is marketed and sold have occurred in the state of Florida. Indeed, customers in Tampa, Florida, were the first members of the general public to be able to purchase CommandTRADE software at a preview held at the Tampa Embassy Suites on November 19, 2005. *See* http://www.prweb.com/releases/2005/12/prweb316580.htm (visited on 8/14/08).

38. On information and belief, Defendants have used television advertising and/or infomercials to market CommandTRADE software throughout the state of Florida.

39. Defendants have also sponsored live CommandTRADE training classes throughout Florida, including classes in Miami and Tampa.

40. On information and belief, Defendants sell a significant portion of their products to Florida customers, and a large portion of Defendants' revenue is gleaned from Florida customers.

41. Plaintiff's claims are directly related to Defendants' business activities in Florida. Indeed, the Application and Enrollment Form given to Plaintiff when he purchased CommandTRADE software expressly states that the form is accepted by GlobalTec and CommandTRADE, LP, "exclusively in Orlando, Florida." The CommandTRADE Software End User License Agreement that Defendants provided to Plaintiff similarly provides that the Agreement was accepted in Orlando, Florida.

42. Defendants should reasonably anticipate being haled into court in this District. Both the CommandTRADE Application and Enrollment Form and the Software End User License Agreement contain a forum selection clause, whereby Defendants have insisted that any proceedings shall be filed only with a court in Orlando, Florida, and shall be "governed by and construed under Florida law."

**Defendants' Unconscionable Arbitration Clause**

43. Defendants have included in their Application and Enrollment Form and Software End User License Agreement an arbitration clause that has the purpose and intent of discouraging consumers from seeking refunds or legal redress. Defendants have also included in those documents purported disclaimers and limitations of liability, which have the same purpose and intent.

44. This arbitration clause and these purported disclaimers and limitations of liability violate public policy by depriving consumers of the ability to obtain meaningful relief for statutory violations, such as violations of Florida's Deceptive

and Unfair Trade Practices Act.

45. These provisions are procedurally unconscionable because they are buried in a maze of fine print and presented in a standardized form on a "take it or leave it" basis, without affording consumers a realistic opportunity to bargain, and under such conditions that consumers cannot obtain the product except by acquiescing in the form.

46. These provisions are also substantively unconscionable because they attempt to limit Defendants' liability to actual damages, eliminate Defendants' exposure to class action proceedings, and force consumers to waive important legal and statutory remedies, including the right to obtain injunctive or declaratory relief and the right to collect costs and attorney's fees.

## PLAINTIFF'S TRANSACTION

47. On October 28, 2005, Defendants made CommandTRADE software available to a preferred group of investors gathered in Dallas, Texas, for an annual convention sponsored by Defendants called "WizeFEST." *See* http://www.prweb.com/releases/2005/12/prweb316580.htm (visited on 8/14/08).

48. Plaintiff attended the 2005 WizeFEST event, at which Defendants marketed the CommandTRADE software. Plaintiff purchased the software at the WizeFEST event on or about October 29, 2005, for approximately $4,325 – a discount from the ostensible regular retail price of $7,995.

49. The CommandTRADE software was conveyed to Plaintiff in a box containing representations regarding the software's automated trading feature, including statements that the software automatically buys and sells stocks "based on your parameters" and "on your selected strategies."

50. Defendants also provided Plaintiff with the CommandTRADE Software End User License Agreement, which contained additional representations regarding CommandTRADE's automated trading feature, including statements that market orders would automatically be sent to Plaintiff's broker based upon Plaintiff's selected

parameters and strategies.

51. Soon after purchasing the software, Plaintiff received in the mail a CommandTRADE "Quick Reference Guide," representing that the automated trading software was a "precision tool" to be entirely controlled by Plaintiff's risk controls and selected strategies. Plaintiff also received a CommandTRADE Training Workbook, confirming, among other things, that the automated trading feature of the program would cause market orders to be sent to Plaintiff's chosen broker/dealer when the conditions of his chosen strategies were met.

52. After paper trading for several weeks, Plaintiff began to use CommandTRADE's automated trading feature to execute actual trades.

53. CommandTRADE malfunctioned almost immediately. Indeed, soon after beginning to use the program, Plaintiff informed a CommandTRADE representative, Nick Pirraglia, of the problems Plaintiff had been experiencing with CommandTRADE. Mr. Pirraglia informed Plaintiff that the CommandTRADE servers were experiencing significant problems. Mr. Pirraglia at that time had to manually exit Plaintiff from a live trade involving several shares of stock, causing Plaintiff to lose a significant amount of money.

54. On numerous occasions, CommandTRADE software also failed to execute trades in accordance with the trading strategies and parameters set by Plaintiff. For example, in a single day, CommandTRADE executed so many erroneous trades that Plaintiff earned only $52 in profit while incurring approximately $900 in commission fees.

55. In October 2006, Plaintiff attended another WizeFEST event sponsored by Defendants, at which Plaintiff confronted CommandTRADE representatives Derek Hughes and Major General (ret.) Douglas Metcalf regarding the defective nature of CommandTRADE's automated trading feature. Mr. Hughes and Mr. Metcalf ignored Plaintiff's concerns.

56. The following year, at Defendants' 2007 WizeFEST event, Plaintiff

again confronted a CommandTRADE representative named Kevin Dixon, who admitted that the CommandTRADE program was significantly flawed and indeed was not performing as it should.

## CLASS ACTION ALLEGATIONS

57. Under Federal Rule of Civil Procedure 23, Plaintiff brings this action individually and on behalf of all persons nationwide who purchased CommandTRADE software during the period from October 28, 2005, to the present.

58. Excluded from the Class are the Defendants, any parent, subsidiary or affiliate of the Defendants, any entity in which one or more of the Defendants has a controlling interest, and the respective officers, directors, employees, agents, legal representatives, heirs, predecessors, successors and assigns of such excluded persons or entities.

59. A class action is proper pursuant to Rule 23(a) for the following reasons:

   (a) On information and belief, the class consists of hundreds or thousands of persons residing throughout the United States, and thus is so numerous that joinder of all members is impracticable.

   (b) This action involves questions of fact or law common to the above-described Class, including but not limited to: (1) whether CommandTRADE software executes trades outside the trading strategies and parameters set by the user of the software; (2) whether Defendants committed unfair and deceptive acts in trade and commerce under the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 501.201 to 501.213) in marketing and selling CommandTRADE software to Plaintiff and Class members; and (3) whether Plaintiff and Class members have suffered actual damages caused by Defendants' conduct.

   (c) Plaintiff's claims are typical of the claims of the Class, and Plaintiff has no interests adverse to the other Class members.

(d) Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in class action litigation regarding consumer transactions.

60. A class action is proper pursuant to Rule 23(b)(2) because in representing that CommandTRADE software executes trades only in accordance with the user's trading strategies and parameters, despite significant flaws that cause the program to malfunction, Defendants have acted on grounds generally applicable to the Class, thereby making it appropriate for the Court to award final injunctive and declaratory relief with respect to the Class as a whole.

61. A class action is also appropriate pursuant to Rule 23(b)(3) because the questions of law and fact regarding the nature and legality of Defendants' practices predominate over any questions affecting only individual Class members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT ONE

## DECEPTIVE AND UNFAIR TRADE PRACTICES

### (Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") – Fla. Stat. §§ 501.201 to 501.213)

62. Plaintiff repeats and incorporates all allegations above as though set forth in full herein.

63. Plaintiff is a "consumer" as defined in the FDUTPA, Fla. Stat. § 501.203(7).

64. Defendants have advertised, solicited, provided, offered, and/or distributed CommandTRADE software to Plaintiff and Class members and thus have engaged in "trade or commerce" as defined in the FDUTPA, Fla. Stat. § 501.203(8).

65. In advertising, soliciting, providing, offering, and/or distributing CommandTRADE software to Plaintiff and Class members, Defendants represented that when used in automatic mode, CommandTRADE software would automatically

trade stocks according to the specific parameters established by the user of the software.

66. Contrary to Defendants' representations, CommandTRADE software in fact makes automatic trades that do not comport with the parameters established by the user of the software.

67. Defendants' misrepresentations regarding the automatic trading feature of CommandTRADE software were likely to mislead consumers acting reasonably in the circumstances, thereby constituting deceptive practices in the conduct of any trade or commerce within the scope of Fla. Stat. § 501.204(1).

68. Defendants' misrepresentations regarding the automatic trading feature of CommandTRADE software offend established public policy and/or were immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, thereby constituting unfair practices in the conduct of any trade or commerce within the scope of Fla. Stat. § 501.204(1).

69. As a result of Defendants' deceptive and unfair practices, Plaintiff and Class members purchased a defective product, thereby incurring ascertainable loss of money and/or property.

70. Wherefore, pursuant to Fla. Stat. § 501.211(2), Plaintiff and Class members seek judgment against Defendants for (1) actual damages; (2) reasonable attorney's fees and costs of suit; and (3) any further relief that the Court may deem just and proper.

71. Defendants' deceptive and unfair practices in the marketing and sale of CommandTRADE software are ongoing and continue to this date. Plaintiff and the Class therefore seek declaratory and injunctive relief pursuant to Fla. Stat. § 501.211(1).

## COUNT TWO
### (UNJUST ENRICHMENT)

72. Plaintiff repeats and incorporates all allegations above as though set forth

in full herein.

73. Plaintiff and Class members paid Defendants monies for CommandTRADE software, thereby conferring a benefit upon Defendants.

74. Defendants knowingly and voluntarily accepted monies paid by Plaintiff and Class members for CommandTRADE software.

75. Defendants have retained monies paid by Plaintiff and Class members for CommandTRADE software and thus have appreciated the benefit conferred upon them.

76. Plaintiff and Class members did not receive the benefit of their bargain when they purchased CommandTRADE software.

77. Permitting Defendants to keep monies paid by Plaintiff and Class members for CommandTRADE software without providing them software that functions in the manner represented by Defendants would be inequitable.

## PRAYER

WHEREFORE, Plaintiff, individually and on behalf of all persons similarly situated, prays for judgment in his favor and against Defendants as follows:

(a) That the Court find that the present case may be properly maintained as a class action under Federal Rule of Civil Procedure 23 and that the Court appoint Plaintiff as the Class representative and his attorneys as counsel for the Class;

(b) That the Court order Defendants to pay damages and make restitution to Plaintiff and Class members, plus pre-judgment and post-judgment interest;

(c) That the Court enjoin Defendants' continued marketing and sale of CommandTRADE software; and

(d) That the Court award attorneys' fees to counsel for Plaintiff and the Class in accordance with Fla. Stat. § 501.2105 and Federal Rule of Civil Procedure 23(h) and award the Class such other and further relief as the

Court may deem just and proper.

## JURY DEMAND

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a trial by jury.

Dated: 2/18/09

COLLING, GILBERT, WRIGHT & CARTER
William B. Young, Jr..
wyoung@thefloridafirm.com
801 North Orange Avenue
Suite 830, Top Floor
Orlando, FL 32801
Telephone: (407) 712-7300
Facsimile: (407) 712-7301

FISHMAN, HAYGOOD, PHELPS,
WALMSLEY, WILLIS & SWANSON, LLP
Joseph C. Peiffer
jpeiffer@fishmanhaygood.com
201 St. Charles Avenue
46th Floor
New Orleans, LA 70170
Telephone: (504) 586-5259
Facsimile: (504) 586-5250

BURKE, HARVEY & FRANKOWSKI, LLC
Richard Frankowski, Jr.
rfrankowski@bhflegal.com
2151 Highland Avenue
Suite 120
Birmingham, AL, 35205
Telephone: (205) 930-9091
Facsimile: (205) 930-9054

*Attorneys for Plaintiff*